Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in the I.C. Form 21 Agreement for Compensation in I.C. File No. 134400, which was approved by the Industrial Commission on June 5, 1991, and in the Pre-Trial Agreement, which was filed by the parties on June 21, 1995, as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties at all relevant times.
2. The defendant was a duly qualified self-insured, with Crawford Company as the servicing agent.
3. On April 15, 1991, the plaintiff sustained a compensable injury to her left arm, left shoulder, left hip and back, arising out of and in the course of her employment with defendant-employer, when she fell to the floor. As a result of this fall, the plaintiff became disabled from work and was incapable of earning wages in her employment on May 8, 1991.
4. On April 15, 1991, the plaintiff's average weekly wage was $236.00, which yields a weekly compensation rate of $157.34.
5. As a result of this injury, the plaintiff was paid temporary total disability compensation from May 8, 1991 through June 30, 1991.
6. The plaintiff returned to work on July 1, 1991.
7. On April 15, 1992, the plaintiff sustained a compensable injury to her right shoulder which resulted in disability beginning on January 21, 1993. The parties have stipulated that this compensation was paid pursuant to a Form 21 Agreement.
8. On April 15, 1992, the plaintiff's average weekly wage was $244.00, which yields a weekly compensation rate of $162.67.
9. As a result of the 1992 shoulder injury, the plaintiff was paid temporary total disability compensation from January 21, 1993 through April 16, 1993, at which time she returned to full duty. A second period of temporary total disability was paid from July 26, 1993 through December 7, 1994.
10. The plaintiff's temporary total disability compensation was terminated on December 7, 1994, as a result of the approval of the Employer's Form 24 application to stop payment of benefits, by Special Deputy Commissioner W. Bain Jones, Jr., on November 10, 1994.
11. The issues for determination are:
 a. Was the defendant entitled to favorable consideration of the application to stop payment, dated October 12, 1994?
 b. What additional compensation for incapacity to earn wages is plaintiff entitled to receive under the Act?
 c. What additional medical compensation is reasonably required to effect a cure, provide relief, or lessen plaintiff's period of disability?
 d. Was treatment by Richard K. Neal, Jr., M.D., reasonably required to effect a cure, provide relief or lessen plaintiff's period of disability?
 e. Was treatment by Roanoke-Chowan Hospital from March 8, 1995 to March 15, 1995 reasonably required to effect a cure, provide relief or lessen the period of disability of symptoms associated with her compensable injuries?
 f. Did plaintiff seek medical treatment which was not authorized by the employer or the Commission and for which the employer is not liable?
 g. Did the plaintiff suffer a substantial change of the condition of her back between June 30, 1991 and June 30, 1993, for which she may seek additional compensation, or is her claim for benefits for her back barred by the applicable statute of limitations for failing to file a claim for additional benefits during that time period?
******************
The Full Commission ADOPTS IN PART and MODIFIES IN PART the Findings of Fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, the plaintiff was a forty-one year old female who obtained her G.E.D. in 1989. The plaintiff began working for the defendant on March 21, 1985, packing thighs and legs.
2. On April 15, 1991, the plaintiff was regularly assigned to work in the defendant's cafeteria, where she served food and operated a cash register. The plaintiff slipped and fell on the floor at that time, sustaining an admittedly compensable injury.
3. Initially, the plaintiff was treated by Dr. Melvin Clayton, an internist, and was thereafter referred to Dr. Josephus Bloem, an orthopaedic surgeon on May 7, 1991. At that time, Dr. Bloem ordered x-rays and an MRI, all of which were reported as normal. The plaintiff was five feet two inches tall and weighed 218 pounds.
4. In subsequent visits with Dr. Bloem, the plaintiff reported pain radiating down the left buttock, to the knee and heel. Conservative treatment was prescribed and on June 28, 1991, Dr. Bloem released the plaintiff to return to the cashier's job.
5. On November 5, 1991, the plaintiff returned to Dr. Bloem due to continued back pain which radiated into the left leg. A CT scan was ordered, which showed no disk herniation. Thereafter, Dr. Bloem referred the plaintiff to neurosurgeon Dr. Nelson Macedo.
6. Dr. Macedo evaluated the plaintiff on November 22, 1991, at which time a myelogram and post-myelogram CT scan were ordered. These diagnostic tests showed a bulging disk at L4-5 level, but no evidence of herniation or nerve compression. Dr. Macedo ordered conservative therapy of exercise and returned the plaintiff to Dr. Bloem's care.
7. On January 16, 1992, the plaintiff returned to Dr. Bloem, at which time he offered to refer her for a second neurosurgical consultation. He further advised that the plaintiff was not a surgical candidate at that time.
8. The plaintiff was seen February 12, 1992, by neurosurgeon Dr. F. Douglas Jones, who reviewed the diagnostic tests and found them all to be within normal limits. Dr. Jones found that there was nothing on the diagnostic studies which could explain plaintiff's left leg pain. He did not see any benefit from any neurosurgical treatment.
9. The plaintiff went on her own to orthopaedic surgeon Dr. Gene Hamilton on March 27, 1992. Dr. Hamilton reviewed all diagnostic studies, which he found were within normal limits. He found the plaintiff to be grossly overweight, but with no neurological deficiencies.
10. The plaintiff returned to Dr. Bloem on April 3, 1992, complaining of back pain. Dr. Bloem recommended drastic weight loss, and returned the plaintiff to the cafeteria job.
11. On April 15, 1992, the plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment when she injured her right shoulder while stocking a vending machine. She continued to work until January 21, 1993, at which time she was taken out of work for right shoulder surgery by Dr. Norman Palmieri.
12. On May 1, 1992, the plaintiff self-referred to Dr. Tally E. Lassiter, an orthopedic surgeon, who also found no objective cause for plaintiff's continued complaints of back pain. Dr. Lassiter concurred with Drs. Bloem and Macedo that plaintiff was not a surgical candidate with respect to her back condition.
13. On May 4, 1992, the plaintiff returned to Dr. Bloem, who advised that there was no further treatment recommended for her back.
14. On July 29, 1992, the plaintiff complained to Dr. Bloem that her back felt worse, but her main complaint was of the shoulder pain. Dr. Bloem released the plaintiff from his care at that time. On September 1, 1992, Dr. Bloem noted that "based on patient's subjective pain without hard documentable findings, I believe she is entitled to a 3% permanent partial injury of the back."
15. The plaintiff returned to Dr. Macedo on September 18, 1992, with complaints of increased back pain radiating down the left leg. Another MRI was ordered which was reported as entirely negative. Dr. Macedo prescribed conservative therapy, daily walking, back exercises, and weight loss.
16. The plaintiff was taken out of work for right shoulder surgery January 21, 1993 by Dr. Norman Palmieri who performed the surgery on February 2, 1993. The defendant has stipulated that plaintiff's shoulder injury is a compensable claim.
17. The plaintiff was out of work due to shoulder surgery from January 21, 1993 until she returned to the cafeteria cashier job on April 16, 1993. She became totally disabled from work on July 26, 1993 for additional surgery on her right shoulder by Dr. Samuel T. Brown. Plaintiff was paid an additional period of temporary total disability compensation from July 6, 1993 through December 7, 1994.
18. From September 18, 1992 until May 18, 1993, the plaintiff sought no medical treatment for her back.
19. On May 18, 1993, the plaintiff returned to Dr. Macedo with complaints of low back pain, but no complaints of radicular pain into the left leg. The plaintiff admitted that she had not done the daily walking or back exercises, as prescribed. Thereafter, on July 15, 1993, the claimant sought treatment with Dr. Robert Hansen, a neurologist, for her back pain. He found no neurological deficits. The plaintiff then returned to Dr. Macedo on July 20, 1993, at which time he released her from his care. Dr. Macedo assigned a five (5) percent permanent partial impairment rating to her back.
20. On July 30, 1993, the defendant ceased its cafeteria operation and began contracting for food service. The plaintiff was out of work due to disability caused by her admittedly compensable shoulder injury at the time the cafeteria operations ceased.
21. On January 18, 1994, Dr. Brown found the plaintiff to be at maximum medical improvement for the right shoulder and assigned a ten percent permanent partial impairment to the right arm. He released plaintiff to return to work with permanent restrictions of no overhead lifting and no repetitive lifting in the frontal plane. Plaintiff's cafeteria job was no longer available.
22. On February 2, 1994, the plaintiff went back to Dr. Hamilton for another opinion on the permanency rating to her back. Dr. Hamilton reviewed the 1992 studies and found no evidence of a bulging disk, herniated disk, or nerve root impingement. He assigned a six (6) percent permanency rating to the back.
23. On May 9, 1994, while she was out of work on temporary total disability for her shoulder injury, the plaintiff sought treatment from Dr. Richard Neal, a neurosurgeon in Norfolk, Virginia. The plaintiff related a history of back pain and left radicular pain after a fall at home on March 15, 1994. Plaintiff's fall at home was unintentional.
24. Dr. Neal ordered an MRI which revealed a small central disk herniation at L5-S1. This injury was attributed to plaintiff's fall at home in March, 1994. On June 16, 1994, Dr. Neal performed surgery, at which time he found a moderately large herniated disk at L5-S1. Dr. Neal rated the plaintiff as having a ten percent permanent partial impairment rating to her back.
25. In response to an inquiry from defendants, Dr. Brown wrote Crawford Health Care Management a letter dated June 8, 1994, approving an hypothetical job description for an imaginary cashier's job as suitable to plaintiff's restrictions, with lifting trays only to 48 inches in height. There is no evidence that the defendant offered plaintiff a job within her restrictions after plaintiff reached maximum medical improvement on January 18, 1994 or after approval of the hypothetical job by Dr. Brown on June 8, 1994.
26. The parties stipulated and the Full Commission finds that plaintiff was paid temporary total disability compensation pursuant to a Form 21 agreement. The Form 21 agreement creates a presumption that the plaintiff's disability continues until she returns to work earning the same or greater wages. The plaintiff was not offered employment by defendant after she reached maximum medical improvement and was released to return to work on January 18, 1994, by Dr. Brown or on October 26, 1994, by Dr. Neal. A cashier's job may have been available to the claimant as of June 8, 1994, for which she was capable of performing; however, the defendant's evidence of this is insufficient to make such a determination. The defendant has failed to prove that plaintiff was capable of earning wages after January 18, 1994, and has failed to prove by the greater weight of the evidence that after January 8, 1994, there was a job available to the plaintiff within the limitations placed upon her by Dr. Brown, or that the plaintiff refused what would have been suitable employment within the limitations imposed by Dr. Brown following her compensable shoulder injury.
27. After the plaintiff's benefits were terminated in December of 1994 when the Industrial Commission approved defendant's Form 24 application to stop payment, the plaintiff began to experience sleep disturbances and nervousness due to the uncertainty of having no income and ongoing debts.
28. On January 30, 1995, the plaintiff went to Roanoke-Chowan Mental Health Services, where she was treated by Janet Worthington, R.N., a supportive counselor. Staff psychiatrist Dr. David Manly evaluated the plaintiff on March 8, 1995, at which time he diagnosed her with major depression and recommended hospitalization under the care of Dr. Robert Blackburn.
29. Dr. Manly found plaintiff's primary concerns were her financial problems.
30. Dr. Robert Blackburn, a psychiatrist in Ahoskie, treated the plaintiff during her hospitalization for depression from May 8 through 15, 1995.
31. The plaintiff applied for jobs after December 7, 1994 at Red Apple convenience store as a cashier, Wal-Mart, Food Lion and Trade Mart. The plaintiff was offered the job at Red Apple, which she rightfully refused to accept because it required work exceeding the limitations placed upon her by Dr. Neal.
32. The plaintiff's depression was not a direct and natural consequence of her compensable 1992 shoulder injury and resulting disability. It was precipitated by her financial problems after her benefits were terminated.
33. The defendant's Form 24 application to stop payment of benefits was improvidently granted.
******************
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. The plaintiff is entitled to resumption of her temporary total disability compensation from the date of termination on December 7, 1994 and continuing at the weekly rate of $162.67 until further order of the Industrial Commission. Kisiah v. W.R.Kisiah Plumbing, Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996);Saums v. Raleigh Community Hospital, 346 N.C. ___, ___ S.E.2d ___ (Filed July 24, 1997; No. 494 PA 96). N.C. Gen Stat. § 97-29.
2. The plaintiff is entitled to permanent partial disability benefits for fifteen weeks at the rate of $157.34, based upon a five percent rating to the back, as recommended by Dr. Macedo in I.C. file No. 134400. N.C. Gen. Stat. § 97-31(23).
3. The plaintiff is not entitled to have the defendant pay for any medical treatment related to treatment for her back condition after 20 July 1993, the date she received a rating from Dr. Macedo. The plaintiff is not entitled to payment of medical expenses incurred from her own unauthorized self-referrals to Dr. Hamilton and Dr. Lassiter. Carter v. Northern Telecom, 123 N.C. App. 547, 473 S.E.2d 774 (1996).
4. Because the plaintiff's depression was not a direct and natural consequence of her compensable 1992 shoulder injury and resulting disability, the plaintiff is not entitled to have the defendant pay for medical expenses incurred as a result of her depression.
5. Since the plaintiff was released to return to work on January 8, 1994, with permanent physical restrictions of no overhead lifting and no lifting in the frontal plane, the defendant has not offered plaintiff suitable employment, and has failed to demonstrate that suitable employment is available to the plaintiff. Saums v. Raleigh Community Hospital, 346 N.C. ___, ___ S.E.2d ___ (Filed July 24, 1997; No. 494 PA 96).
6. As a result of her continuing compensable disability, plaintiff is entitled to resumption of her temporary total disability compensation at the rate of $162.67 per week beginning December 7, 1994, through the date of hearing and continuing until she returns to work earning the same or greater wages or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
7. Plaintiff's attorney is entitled to appropriate compensation. Gen. Stat. §§ 97-90.
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. The defendant's Form 24 application to stop payment of benefits was improvidently granted and its approval is therefore herewith vacated.
2. Subject to the attorney fee provided for below, defendant shall pay plaintiff temporary total disability compensation at the rate of $162.67 per week from 7 December 1994 through the date of hearing and continuing until she returns to work earning the same or greater wages or until further order of the Industrial Commission. The accrued amounts shall be paid in a lump sum.
3. Subject to a reasonable attorney's fee herein approved, the defendant shall pay fifteen weeks of disability compensation at the rate of $157.34 per week for the 5% permanent partial disability to plaintiff's back resulting from the April 15, 1991, injury under I.C. File 134400.
4. Defendant shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable shoulder injury for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
5. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff herein is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
6. The defendant shall pay the costs.
 S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________________ COY M. VANCE COMMISSIONER
S/ __________________________ LAURA K. MAVRETIC COMMISSIONER